UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HARRY FOSTER,

       Plaintiff,

  v.                                  17-CV-6-LJV-HKS
                                      DECISION & ORDER
NATIONAL RECOVERY AGENCY,

       Defendant.
_____

       The plaintiff, Harry Foster, has filed a complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Docket Item 1. He alleges that the defendant, National Recovery Agency ("NRA"), attempted to collect a medical debt that Foster supposedly owed NRA's client 1) by repeatedly calling Foster's cell phone using an automated telephone dialing system ("ATDS") and 2) by using a prerecorded voice to leave messages on his cell phone even after he asked NRA to stop. *See generally id*.

       This Court initially handled all discovery and other pretrial matters itself. *See* Docket Items 11-27. But shortly after Foster moved for summary judgment, *see* Docket Item 28, this Court referred the case to United States Magistrate Judge H. Kenneth Schroeder, Jr., to handle all pretrial matters and issue a report and recommendation on any dispositive motions, *see* Docket Item 29. This Court later affirmed Judge Schroeder's decision to "terminate" Foster's summary judgment motion "without

1

prejudice" so that the parties could engage in further discovery.  See Docket Item 57 at 2.

After that discovery was complete, on February 18, 2022, both parties moved for summary judgment on Foster's TCPA claim.  Docket Item 63 (NRA's motion); Docket Item 64 (Foster's motion).[1]  On March 11, 2022, both parties filed their respective opposition.  Docket Item 67 (NRA's opposition to Foster's motion); Docket Item 69 (Foster's opposition to NRA's motion).  And on March 18, 2022, both parties filed their respective replies.  Docket Item 70 (NRA's reply); Docket Item 71 (Foster's reply).

This Court now rescinds the earlier referral to Judge Schroeder and addresses the pending motions in the first instance.  For the reasons that follow, the Court denies Foster's motion, grants NRA's motion in part, and denies NRA's motion in part.

## FACTUAL BACKGROUND[2]

On June 11, 2013, the medical staff at Eastern Niagara Hospital in Lockport, New York, treated Foster for injuries sustained in a car accident.  Docket Item 64-24 ¶ 12.  As part of his diagnosis and treatment, Foster had x-rays taken.  Docket Item 63-11

---

[1] NRA does not expressly say that its motion is limited to Foster's TCPA claim, but it does not raise any grounds for granting summary judgment with respect to Foster's FDCPA claim.  See Docket Item 63-1 at 9-11 (referencing the FDCPA only insofar as it affects the viability of Foster's TCPA claim).

[2] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  See Collazo v. Pagano, 656 F.3d 131, 134 (2d Cir. 2011).  The following facts are taken from NRA's statement of material facts, Docket Item 63-11; Foster's opposition to NRA's statement of material facts, Docket Item 69-1; Foster's statement of material facts, Docket Item 64-24; NRA's opposition to Foster's statement of material facts, Docket Item 67-13; and the exhibits incorporated in those filings.  With respect to each motion, the facts are construed in the light most favorable to the non-moving party.

¶ 4.  Because Eastern Niagara Hospital had an arrangement with a separate legal entity, Eastern Niagara Radiology, to read and interpret imaging tests, Eastern Niagara Radiology read and interpreted Foster's x-rays.  Docket Item 64-24 ¶¶ 13, 14.

Foster allegedly failed to pay Eastern Niagara Radiology for these services, and Eastern Niagara Radiology engaged NRA, a debt collection agency, to collect the debt.  Docket Item 63-11 ¶ 5.  As part of its collection effort, NRA began calling Foster on his cell phone.  *Id*. ¶ 7.

The parties dispute how NRA came to possess Foster's cell phone number.  NRA says that Foster gave his number to Eastern Niagara Hospital when he arrived for treatment; that the hospital gave the number to Eastern Niagara Radiology; and that NRA got the number when it was asked to collect the debt.  Docket Item 63-11 ¶¶ 16, 17.  But Foster says that he does not recall giving Eastern Niagara Hospital his cell phone number.  Docket Item 64-1 ¶ 7.

Regardless of how the number was obtained, NRA apparently called Foster seventy-three times, *see* Docket Item 64-24 ¶ 2, and left several messages on his cell phone, *see* Docket Item 63-11 ¶ 22; Docket Item 64-24 ¶ 7.  In fact, Foster claims that forty-six messages were left, all of them with a prerecorded voice.  Docket Item 64-24 ¶ 7.  NRA denies this.  Docket Item 67-13 ¶ 7.

In his complaint, Foster alleges that NRA violated the FDCPA and TCPA through its attempts to collect the debt he supposedly owed to Eastern Niagara Radiology.  Docket Item 1.  His TCPA claims are based on 1) NRA's alleged use of an ATDS to call Foster's cell phone (the "ATDS-Based Claims"), and 2) NRA's alleged use of a prerecorded voice to call Foster's cell phone (the "Prerecorded-Voice-Based Claims").

*Id*. ¶ 33.  Both parties have moved for summary judgment on those claims.  Docket Item 63; Docket Item 64.

## **LEGAL PRINCIPLES**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant—that is, the party seeking summary judgment—has the initial burden of showing that there is no genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B).  Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of a material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).  If the nonmovant fails to do that, the court may grant summary judgment.  *See Celotex*, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  "[T]he court must view the evidence in the

4

record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

The TCPA prohibits, in part, the use of "any automatic telephone dialing system or an artificial or prerecorded voice" to call "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A); *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021). But the statute permits such calls made with the prior consent of the called party. *Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804, 806 (2d Cir. 2014).

In its motion for summary judgment, NRA argues that 1) Foster's ATDS-Based Claims are no longer viable after the Supreme Court's ruling in *Facebook*, *see* Docket Item 63-1 at 4, 5, and 2) both the ATDS- and Prerecorded-Voice-Based Claims are not viable because Foster consented to be called, *see id*. at 7-9.[3] In support of his motion, Foster argues that there is no reasonable dispute that NRA used a prerecorded voice to call his cell phone on 46 occasions without his consent. *See generally* Docket Item 64-25. This Court addresses each of these arguments in turn.

---

[3] NRA also argues that Foster failed to inspect the NRA dialing system to establish that it is an ATDS, *id*. at 6, 7, and that Foster never properly revoked his consent to be called, *id*. at 9-13. For the reasons that follow, this Court need not and does not reach those issues.

5

    **I.**        **Foster's ATDS- and Prerecorded-Voice-Based Claims**

Foster concedes that after the Supreme Court's ruling in *Facebook*, his ATDS-Based Claims are no longer viable. *See* Docket Item 69 at 1 ("Plaintiff is not contesting or opposing the aspect of [the d]efendant's motion with respect to whether or not in a post *Facebook* world, the [d]efendant violated the TCPA by virtue of its use [of] an ATDS to call the [p]laintiff's [cellular] telephone without his express consent."). But that decision does not affect Foster's Prerecorded-Voice-Based Claims, and there is a genuine dispute of material fact about whether—and, if so, how many of—those claims survive.

TCPA claims based on the use of an ATDS are distinct from TCPA claims based on the use of a prerecorded voice, so undisputed facts that might warrant the dismissal of one set of claims do not necessarily require dismissal of the other set. *See Facebook*, 141 S. Ct. at 1173 (addressing the definition of ATDS in its decision and adding that "[t]he statute separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines . . . . Our decision does not affect that prohibition.") (quoting 47 U. S. C. § 227(b)(1)). In *Facebook*, the Supreme Court found that "[t]o qualify as an '[ATDS],' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. at 1167. The Court reversed a ruling by the Ninth Circuit that an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." *Id*. at 1168 (internal quotations omitted).

6

Count Two of Foster's complaint alleges violations of the TCPA "by initiating telephone calls to [the p]laintiff's cellular telephone using an automated telephone dialing system and/or using an artificial and/or prerecorded voice to deliver messages without having the consent of [the p]laintiff to leave such messages." Docket Item 1 ¶ 33. So Foster raised both ATDS-Based Claims and Prerecorded-Voice-Based Claims. But because Foster concedes that his ATDS-Based Claims are no longer viable after the Supreme Court's holding in *Facebook*, the Court grants summary judgment to NRA on Foster's ATDS-Based Claims.

Both sides agree that a number of Prerecorded-Voice-Based Claims are unaffected by *Facebook*. *See* Docket Item 63-1 at 14; Docket Item 64-25 at 9. But they disagree about how many calls left a message and whether messages were prerecorded.

Foster alleges that there were forty-six calls that used a prerecorded voice and left a prerecorded message on his voicemail. Docket Item 64-25 at 9. He supports that claim with an Eastern Niagara Radiology document and related deposition testimony of NRA President Steven C. Kusic, in which Kusic states that the document's call list shows that several messages were left on Foster's cell phone. *See* Docket Item 64-9 at 41-47 (deposition pages 113-19); Docket Item 64-10. Foster also states in his affidavit that prerecorded messages were left on his cell phone every time he missed a call from NRA, and he submits a purported recording of one such message. Docket Item 64-1 ¶ 11; Docket Item 64-2.

NRA, on the other hand, admits that forty-five messages were left on Foster's cell phone, Docket Item 63-1 at 14, but denies that Kusic's testimony or the Eastern Niagara

7

Radiology document establishes that the messages were prerecorded.  Docket Item 67 at 11-14.  NRA also contends that Foster cannot carry his burden on summary judgment for all the messages with a partial recording of only one message.  *Id*. at 14.

In light of all that, there clearly is a disputed issue of fact as to whether—and, if so, how many of—NRA's messages were prerecorded.  NRA does not appear to ask for summary judgment on this issue.  *See generally* Docket Item 63-1 at 13, 14 (not arguing that the summary judgment standard has been met on the issue of using a prerecorded voice despite discussing the forty-five allegedly prerecorded messages).  In any event, to the extent that NRA's motion raises the issue, summary judgment is denied.

Foster, on the other hand, has failed to demonstrate that Kusic's deposition testimony admits that the disputed messages were prerecorded.  Kusic's answers admit that messages were left, but contrary to Foster's assertion, Docket Item 71 at 1-4, it is unclear whether Kusic admitted that the messages were prerecorded.  *See* Docket Item 64-9 at 41, 42 (deposition pages 113:25-114:4) ("Well, where it says '[t]elephone mobile, answering machine,' we would have left an answering-machine message, *but I don't know what that message would have been*.") (emphasis added).  Despite being specifically asked to identify prerecorded messages, Kusic's testimony is—at best for Foster—ambiguous about whether Kusic was specifically identifying *prerecorded* messages.  So a reasonable juror might well interpret this testimony as demonstrating that Kusic was identifying calls when messages were left but did not know what specific type of messages he was identifying.

Accordingly, Foster has not established that there is no reasonable dispute as to whether—and, if so, how many—calls used a prerecorded voice and left a prerecorded

Case 1:17-cv-00006-LJV-HKS   Document 72   Filed 03/23/23   Page 9 of 12

message on his cell phone.  Because that is a necessary element of Foster's Prerecorded-Voice-Based Claims, his summary judgment motion is denied.[4]

## II.     Foster's Express Consent

NRA argues that it is entitled to summary judgment because Foster expressly consented to receiving calls—prerecorded or not.

The TCPA creates an exception to the bar on using an ADTS or prerecorded voice if the calls were "made with the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A)(iii); *Nigro*, 769 F.3d at 806.  Providing one's phone number to an entity constitutes consent for that entity to use the number to collect a debt, so long as "such number was provided during the transaction that resulted in the debt [being] owed."  *Nigro*, 769 F.3d at 806 (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 (2008)); *Salerno v. Credit One Bank, N.A.*, No. 15-CV-516V(F), 2020 WL 1558153, at *6 n.11 (W.D.N.Y. Mar. 31, 2020) ("[T]he Second Circuit has recognized that where a subsequent telephone number is not 'provided during the transaction that resulted in the debt owed' it was not provided with the consumer's prior express consent . . . ."), *report and recommendation adopted in part, rejected in part*, No. 15-CV-516 (JLS), 2020 WL 4339219 (W.D.N.Y. July 28, 2020).  The exact scope of such consent is a fact-intensive inquiry.  *See Latner v. Mount Sinai Health Sys.*, 879 F.3d 52, 54 (2d Cir. 2018) ("In 2014, the FCC clarified that 'the scope of [an individual's prior express] consent must be determined upon the

---

[4] Foster also is not entitled to summary judgment because of the issues of fact regarding his consent discussed below.

facts of each situation.'") (quoting *GroupMe, Inc.*, 29 F.C.C. Rcd. 3442, 3446, ¶ 11 (2014)).[5]

Consent is an affirmative defense under the TCPA. *Id.* ("Prior express consent is an affirmative defense to liability under the TCPA."). Accordingly, the burden is on NRA to demonstrate that Foster consented to receive the calls that allegedly used a prerecorded voice. *See Moore v. Firstsource Advantage, LLC*, No. 07-CV-770, 2011 WL 4345703, at *11 (W.D.N.Y. Sept. 15, 2011) (denying summary judgment "[i]n light of the fact that [d]efendant bears the burden of proof on the question of prior express consent . . . .") (quotations omitted). Simply establishing that a defendant obtained a plaintiff's phone number is insufficient to carry this burden. *See id.* (denying summary judgment because defendant failed to provide evidence that plaintiff ever gave it her cell phone number, despite there being no dispute that defendant ultimately somehow obtained the number); *Moltz v. Firstsource Advantage, LLC*, No. 08-CV-239S, 2011 WL 3360010, at *5 (W.D.N.Y. Aug. 3, 2011) ("Plaintiff does not remember providing his cellular phone number to Time Warner . . . . Whether [p]laintiff gave Time Warner his cellular number is a factual issue that the jury must resolve."); *Forney v. Grand Island Chiropractic, P.C.*, No. 18-CV-616, 2019 WL 8063922, at *4 (W.D.N.Y. Nov. 8, 2019)

---

[5] The parties dispute whether Foster's purported consent to receive the calls could be conveyed from Eastern Niagara Hospital to NRA through Eastern Niagara Radiology. *See* Docket Item 63-1 at 7-9 (relying on *GroupMe* as applied in *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338 (6th Cir. 2016)); Docket Item 64-25 at 5-7 (relying on *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. at 564). Because there is a dispute of material fact as to whether consent was given to Eastern Niagara Hospital in the first place, this Court need not and does not reach that thorny issue. *See GroupMe*, 29 FCC Rcd at 3447, ¶ 14 ("We emphasize that the intermediary may only convey consent that has actually been provided by the consumer; the intermediary cannot provide consent on behalf of the consumer.").

(denying summary judgment where "[d]efendants [did] not offer[] any evidence that [p]laintiff provided her cellular phone number or otherwise agreed to be contacted on her cellular phone when she became a patient of Dr. Saia's"), *report and recommendation adopted*, No. 18-CV-616, 2020 WL 924205 (W.D.N.Y. Feb. 25, 2020).

NRA has failed to carry its burden. Foster claims that he does not recall giving his phone number to Eastern Niagara Hospital. Docket Item 64-1 ¶ 7. In response, NRA submits a purported "intake form" from Eastern Niagara Hospital that includes Foster's phone number. Docket Item 70-2. But nothing on that nearly illegible form indicates it was filled out by, or includes information provided only by, Foster. In other words, this document merely demonstrates that whenever the document was typed, Eastern Niagara Hospital had Foster's phone number from some source. And because mere possession of a plaintiff's phone number fails to establish the affirmative defense of express consent at the summary judgment stage, *see Moore*, 2011 WL 4345703, at *11; *Moltz*, 2011 WL 3360010, at *5, NRA is not entitled to summary judgment here.

NRA also argues that it would not have made sense for Foster to provide the hospital with his address, social security number, and insurance information—but not his phone number. Docket Item 70 at 1. And that argument may well convince a fact finder at trial. But it is insufficient to carry the day on a motion for summary judgment. *See Abdu-Brisson*, 239 F.3d at 466 (courts must draw "all reasonable inferences in [the nonmoving] party's favor" on summary judgment).

In sum, because NRA has not provided conclusive evidence that Foster gave Eastern Niagara Hospital his phone number, NRA is not entitled to summary judgment based on its express consent affirmative defense. *See Rawlins v. Stoneberry & Mason*

11

*Companies, Inc.*, 1:15-cv-296 (BKS/CFH), 2016 WL 7742810, at *5 (N.D.N.Y. Sept. 1, 2016) (denying summary judgment because plaintiff's testimony that she did not provide her cell phone number was alone sufficient to "raise[] an issue of fact regarding whether she . . . consented to the calls.").[6]

## **CONCLUSION**

For the reasons stated above, Foster's motion for summary judgment, Docket Item 64, is DENIED, and NRA's motion for summary judgment, Docket Item 63, is GRANTED in part and DENIED in part.  Foster's ATDS-Based Claims are dismissed, but his Prerecorded-Voice-Based Claims are not.  Within thirty days of this decision, the parties shall contact the Court to schedule a status conference to set a date for trial.

SO ORDERED.

Dated:   March 23, 2023
            Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[6] As noted above, because there is an issue of fact regarding whether Foster consented to receive prerecorded calls, that precludes summary judgment for Foster on all claims.